***********
The Full Commission reviewed the Interlocutory Order by former Deputy Commissioner Douglas E. Berger, filed on December 10, 2002, based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission on April 14, 2005. The appealing party has not shown good ground to reverse the prior decision of the Deputy Commissioner; however, in its discretion, the Full Commission hereby MODIFIES, in part, the December 10, 2002 Order of Deputy Commissioner Berger.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The December 10, 2002, Order by Deputy Commission Berger sanctioning the law firm Brooks, Stevens Pope originated from a series of cases, over 200 in total, involving asbestos-related illnesses and/or injuries to employees of the defendant Dayco. The 200 cases were consolidated for the purposes of discovery and trial. Deputy Commissioner Berger held numerous scheduling conferences and hearings to address various issues involving all 200 cases. As a result of one such hearing, Deputy Commissioner Berger entered an Order on May 18, 2001, addressing the production of information regarding the defendants' retained expert, Dr. William L. Dyson. The defendants, through their counsel, Brooks, Stevens Pope, intended to call Dr. Dyson as an expert to refute allegations that Dayco employees were exposed to harmful levels of asbestos at the Dayco facility.
2. The May 18, 2001 Order by Deputy Commissioner Berger stated in pertinent part that the defendants were to provide the plaintiffs with the following information regarding Dr. Dyson:
 (1) All documents that were provided to Dr. William L. Dyson upon which he will render his opinion;
 (2) All correspondence directed to Dr. William L. Dyson; and
 (3) A summary report provided by Dr. William L. Dyson as to his expected testimony.
The Full Commission notes that Brooks, Stevens Pope did not object to, or file a notice of appeal from, the May 18, 2001 Order.
3. On July 19, 2001, Brooks, Stevens Pope sent a letter to the plaintiffs' counsel indicating that it was complying with the May 18, 2001 Order of Deputy Commissioner Berger, and was forwarding information regarding Dr. Dyson to plaintiffs' counsel. Subsequently, on July 23, 2001, Brooks, Stevens Pope sent a letter directly to Deputy Commissioner Berger indicating that it had complied with his May 18, 2001 Order regarding Dr. Dyson. The Full Commission notes that at no place in the letter did Brooks, Stevens Pope indicate that the Order was vague or that it needed clarification by the Deputy Commissioner.
4. The parties initially intended Dr. Dyson to testify by a special set hearing before Deputy Commissioner Berger; however, the Deputy Commissioner entered an Order on September 5, 2001, which eliminated the option for Dr. Dyson to testify by special set hearing, and instead required that his expert testimony be taken by deposition. The September 5, 2001 Order further required that, prior to the deposition, the parties were to exchange expert reports, and required the defendants to disclose correspondence and/or documents "provided to Dr. Dyson which he relied upon to render his report."
5. The deposition of Dr. Dyson was scheduled for June 21, 2002. Approximately five weeks prior to the deposition, the plaintiffs' counsel wrote the Brooks, Stevens Pope firm and asked that it produce any information that was provided to Dr. Dyson that was not previously produced. Brooks, Stevens Pope did not produce anything in response to this letter.
6. On June 21, 2002, during Dr. Dyson's deposition, Dr. Dyson was questioned by the plaintiffs' counsel about documents that he received from Brooks, Stevens Pope. Attorney Michael Sigmon of Brooks, Stevens Pope interrupted the questioning and once again assured the plaintiffs' counsel that all information provided to Dr. Dyson had been produced. Shortly thereafter, Dr. Dyson testified that, approximately six months to one year prior to the deposition, he was provided with photographs of the pipe insulation at the Dayco facility. At that point, Brooks, Stevens Pope agreed to provide the plaintiffs' counsel with a copy of the photographs at a later date, but offered no reason for their failure to produce the photographs in accordance with the May 18, 2001 Order by Deputy Commissioner Berger. The Full Commission finds that the time frame in which Dr. Dyson stated that he received the photographs was within the time period that Brooks, Stevens Pope represented to the counsel for plaintiffs and the Industrial Commission that it was in compliance with the May 18, 2001 Order. However, contrary to the representation of Brooks, Stevens Pope, the photographs were not produced.
7. Approximately four weeks after the deposition, Brooks, Stevens 
Pope provided the plaintiffs' counsel with copies of the photographs referenced by Dr. Dyson in his deposition. Counsel for the plaintiffs discovered at that time that Brooks, Stevens Pope had provided 72 photographs to Dyson, with several of the photographs demonstrating asbestos-containing insulation in a damaged or deteriorated condition at the Dayco facility.
8. Brooks, Stevens Pope contends that Dr. Dyson did not base his opinion on the photographs of the pipe insulation at the Dayco facility. Although it is evident that Dr. Dyson based his opinions given at deposition upon his background knowledge and epidemiological studies, it is clear from his testimony at deposition that he recalled reviewing photographs of the pipe insulation at the Dayco facility, and in fact still had possession of such photographs. Given that Dr. Dyson was hired as an expert by Brooks, Stevens Pope to refute allegations that Dayco employees were exposed to harmful levels of asbestos at the Dayco facility, the Full Commission finds that it is more than probable that a portion of Dr. Dyson's opinion was based upon the pictures of the pipe insulation at the Dayco facility that were given to him by Brooks, Stevens Pope.
9. Brooks, Stevens Pope further contends that the September 5, 2001 Order by Deputy Commissioner Berger superceded his May 18, 2001 Order, which was entered to require Dr. Dyson to testify by deposition instead of by a special set hearing before the Deputy Commissioner. Brooks, Stevens Pope would have the Commission believe that because the September 5, 2001 Order required the defendants to disclose correspondence and/or documents "provided to Dr. Dyson which he relied upon to render his report," such language superceded the May 18, 2001 Order stating that defendants shall provide "all documents that were provided to Dr. William L. Dyson upon which he will render his opinion." The Full Commission notes that nowhere within the September 5, 2001 Order did Deputy Commissioner Berger ever rescind, revoke or indicate that the September 5, 2001 Order supercedes the May 18, 2001 Order. The clear purpose of the September 5, 2001 Order was to require that Dr. Dyson's testimony be taken by deposition, and there is no indication that there was any reason or purpose for the Deputy Commissioner to alter or amend the provisions of the May 18, 2001 Order regarding discovery. Thus, the Full Commission finds that the September 5, 2001 Order did not supercede the May 18, 2001 Order by Deputy Commissioner Berger, and that the May 18, 2001 Order remained in full force and effect regarding the defendants' duty to provide "all documents that were provided to Dr. William L. Dyson upon which he will render his opinion." The Full Commission further finds that Brooks Stevens Pope failed to comply with the May 18, 2001 Order by failing to provide photographs that were given to Dr. Dyson upon which he was to render his opinion in this matter.
10. The Full Commission finds that Brooks, Stevens Pope failed to comply with N.C. Industrial Commission Rule 605 by failing to comply with the May 18, 2001 Order by Deputy Commissioner Berger compelling discovery. Thus, the Full Commission hereby reduces the sanction awarded by Deputy Commissioner Berger and finds the amount of $2,500.00 to be a reasonable sanction for the failure of Brooks, Stevens Pope to comply with the discovery requirements of Rule 605.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
N.C. Industrial Commission Rule 802 provides that failure to comply with any Rules of the Commission may subject the violator to any sanctions outlined in Rule 37 of the N.C. Rules of Civil Procedure. Further, N.C. Industrial Commission Rule 605(5) provides that sanctions may be imposed for failure to comply with a Commission order compelling discovery. Thus, Brooks, Stevens Pope shall be sanctioned in the amount of $2,500.00 for failing to comply with the discovery requirements of Industrial Commission Rule 605.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Brooks, Stevens Pope, the defendants' counsel, is hereby SANCTIONED in the amount of $2,500.00, and shall pay such amount to the law firm of Wallace Graham, for failure to comply with the discovery requirements of N.C. Industrial Commission Rule 605, pursuant to N.C. Industrial Commission Rules 605(5) and 802, and Rule 37 of the N.C. Rules of Civil Procedure. This sum shall be paid to Wallace Graham immediately upon receipt of this Order.
2. The parties shall have the opportunity to depose Dr. William L. Dyson regarding any material previously withheld by defendants, including the 72 photographs provided to Dr. Dyson by Brooks, Stevens Pope. Additionally, Brooks, Stevens Pope shall pay the costs of this deposition.
3. No further costs are assessed at this time.
This 8th day of November 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER